IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff/Appellee, | ) ) | Criminal Case No. 25-cr-00074-LKG |
| v. | ) ) | Dated:  November 25, 2025 |
| CECEIRO A. QUIAH, | ) ) ) | |
| Defendant/Appellant, *pro se*. | ) ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this matter, the Appellant *pro se*, Ceceiro A. Quiah, appeals his conviction of: (1) driving with a breath alcohol content of .08% or higher, in violation of 36 C.F.R. § 4.23(a)(2); and (2) unsafe operation of a vehicle, in violation of 36 C.F.R. § 4.22(b)(1), following trial held on February 6, 2025.  *See* ECF Nos. 1 and 1-4.  The appeal is fully briefed.  ECF Nos. 5, 9 and 14.  For the reasons discussed below, the Court: (1) **AFFIRMS** the Appellant's convictions and (2) **DISMISSES** the appeal.

**II.   FACTUAL BACKGROUND**

Case Overview

As background, on April 26, 2024, the Appellant was arrested by the United States Park Police ("USPP") and charged by violation notice with the following four offenses: (1) driving under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1); (2) driving with a breath alcohol content of .08% or higher, in violation of 36 C.F.R. § 4.23(a)(2); (3) unsafe operation of a vehicle, in violation of 36 C.F.R. § 4.22(b)(1); and (4) failure to maintain proper control of a motor vehicle, in violation of 36 C.F.R. § 4.22(b)(3).  *See* ECF No. 9 at 1; *see also United States v. Quiah*, CBA-24-po-3764 (ECF Nos. 1, 3, 4 and 5).  On September 18, 2024, the Appellant appeared for his initial appearance, during which U.S. Magistrate Judge C. Bruce Anderson scheduled trial for December 5, 2024.  *See United States v. Quiah*, CBA-24-po-3764 (ECF Nos. 2 and 8).

On October 9, 2024, Defense counsel entered an appearance in the case and requested

discovery. *United States v. Quiah*, CBA-24-po-3764 (ECF Nos. 11 and 12). Thereafter, Defense Counsel filed a motion to suppress evidence on October 30, 2024. *United States v. Quiah*, CBA-24-po-3764 (ECF No. 13).

On November 21, 2024, the Government filed a consent motion to continue the trial date, because the arresting officer was scheduled for professional training on the December 5, 2024, trial date. *United States v. Quiah*, CBA-24-po-3764 (ECF No. 14). The Defense later objected to this motion for a continuance on November 22, 2024. *United States v. Quiah*, CBA-24-po-3764 (ECF No. 15).

On November 26, 2024, the Court granted the Government's motion to continue and rescheduled the trial date to February 6, 2025. *United States v. Quiah*, CBA-24-po-3764 (ECF No. 19). On January 22, 2025, the Government filed a response in opposition to the Appellant's motion to suppress evidence. *United States v. Quiah*, CBA-24-po-3764 (ECF No. 20).

Prior to commencing the trial, the Magistrate Judge held a hearing on the Appellant's motion to suppress. ECF No. 9 at 3. At the conclusion of the hearing, the Magistrate Judge denied the Appellant's motion. *Id.*

The Trial

The Court held a bench trial in this matter on February 6, 2025. *United States v. Quiah*, CBA-24-po-3764 (ECF No. 21). During the trial, the Government presented USPP Officers Christian Callahan and Shanique Stewart as witnesses. ECF No. 9 at 4.

During the trial, Officer Callahan testified that, on April 26, 2024, he was patrolling the northbound Baltimore-Washington Parkway ("BW Parkway") in the area of Powder Mill Road, when he saw a black Cadillac Escalade enter the ramp to the BW Parkway. Tr. at 10:11-11:20 (ECF No. 9-1). Officer Callahan also testified that he observed the Cadillac swerving to the extent that it crossed the fog line and nearly struck the concrete wall on the ramp. *Id.* at 11:21-14:16.

In addition, Officer Callahan testified that he continued following the Cadillac northbound and the vehicle continued to swerve, crossing both the center dotted line and the fog line multiple times. *Id.* at 11:21-16:17. And so, Officer Callahan testified that he activated his cruiser's front radar, and it recorded the Cadillac's speed at 76 miles per hour ("m.p.h.") in a 55-m.p.h. zone. *Id.* at 11:21-12:1, 25:16-20 and 129:15-19.

Officer Callahan also testified that he activated emergency equipment to initiate a traffic

stop, after following the vehicle for approximately five miles. *Id.* at 16:18-17:21. Officer Callahan then approached the vehicle on the passenger side, for officer safety, and he made contact with the driver through the passenger side window. *Id.* at 17:22-18:22.

Officer Callahan testified that he smelled an odor of an alcoholic beverage coming from the vehicle and that he observed that the Appellant's eyes were glassy, the Appellant's speech was stumbling and confused and the Appellant was fumbling with documents. *Id.* at 18:23-20:10. Officer Callahan also testified that he identified the Appellant as the driver of the vehicle based on his Maryland driver's license. *Id.* at 20:11-21:1.

Officer Callahan further testified that he asked the Appellant to step out of the vehicle, to perform standardized field sobriety tests ("SFSTs"). *Id.* at 21:8-10 and 55:12-19. In this regard, Officer Callahan testified that when he walked to the driver's side of the vehicle to assist the Appellant in safely exiting the vehicle, he smelled the odor of an alcoholic beverage coming from the Appellant's person and again observed the Appellant's glassy eyes. *Id.* at 55:12-56:23. Officer Callahan also testified that the Appellant was unsteady on his feet and needed to be assisted to the front of his vehicle. *Id.* at 56:3-14. And so, Officer Callahan conducted SFSTs on an area of the roadside that was paved, dry and smooth. *Id.* at 57:1-5.

With regards to the SFSTs administered to the Appellant, Officer Callahan testified that he started with the horizontal gaze nystagmus ("HGN") test and that the Appellant displayed six out of six clues indicating intoxication: lack of smooth pursuit in both eyes, distinct and sustained nystagmus at maximum deviation in both eyes, and onset of nystagmus prior to 45 degrees present in both eyes. *Id.* at 58:4-61:5. Officer Callahan also testified that the Appellant failed to follow instructions during the HGN test, by following the officer's stimulus with his head rather than his eyes, and at times failing to follow the pen at all. *Id.* at 61:2-5.

Officer Callahan testified that he next conducted the walk and turn ("WAT") test and that the Appellant exhibited three of eight possible clues. *Id.* at 61:6-63:14. Specifically, Officer Callahan testified that the Appellant missed heel to toe steps, stepped off the line and used his arms to balance, and that the Appellant had to be instructed multiple times and repeatedly interrupted him. *Id.* at 61:9-62:12 and 67:6-74:11.

Officer Callahan further testified that he next conducted the one leg stand ("OLS") test, during which the Appellant displayed two clues, namely, the Defendant swayed while balancing and put his foot down. *Id.* at 63:15-64:18. Officer Callahan also testified that the Appellant kept

3

interrupting him with repetitive questions and required multiple demonstrations of the test and that the Appellant refused to submit to a portable roadside breath test ("RBT"). *Id.* at 64:19-65:4 and 74:12-79:11.

Given this, Officer Callahan testified that he believed that the Appellant was under the influence of alcohol. *Id.* at 65:2-11. During the trial, USPP Officer Shanique Stewart also testified that she also believed the Appellant was under the influence of alcohol. *Id.* at 94:14-17. And so, the Officers placed the Appellant under arrest and transported the Appellant to USPP District Four Police Station. *Id.* at 81:23-82:1 and 101:21-23.

Officer Stewart testified that, once the Appellant arrived at the police station, she administered a breath test to the Appellant using the Intoximeter EC/IR-II. *Id.* at 102:1-19. Officer Stewart also testified that the Appellant was very uncooperative, questioning everything and requiring multiple individuals to assist in answering his questions, delaying the procedure during the breath test. *Id.* at 102:10-16.

In addition, Officer Stewart testified that she was trained and certified in operating the Intoximeter. *Id.* at 102:10-103:11. Officer Stewart further testified that she advised the Appellant of his *Miranda* rights and of the USPP 36 C.F.R.§ 4.23 chemical testing notice, which establishes implied consent to a breath test where an officer has probable cause to believe an individual was driving under the influence of alcohol on federal lands. *Id.* at 103:12-24.

Officer Stewart further testified that she started a 20-minute observation period of the Appellant to ensure that the Appellant retained no mouth alcohol during the breath test. *Id.* at 104:6-17. In this regard, Officer Stewart testified that the Appellant's observation period was restarted once due to the Appellant burping, which may introduce mouth alcohol. *Id.* at 104:6-105:16. Officer Stewart also testified that the second 20-minute observation period was completed with the Appellant being observed by an officer at all times. *Id.* at 106:3-22. And so, after the second 20-minute observation period, the Appellant blew two valid breath samples into the Intoximeter, and the instrument recorded his breath alcohol content. *Id.* at 106:25-107:13.

Lastly, Officer Stewart testified that the Intoximeter was in proper working order when the Appellant's breath test was conducted. *Id.* at 107:14-16.

During the trial, the Government introduced into evidence a breath testing instrument certification notice, which indicates that the Intoximeter used for the Appellant's breath sample "has been tested and found to be suitable for use in analyzing breath alcohol for evidential

purposes" and that "[t]he instrument conforms to the standards required by the United States Department of Transportation for evidential breath alcohol measurement." *Id.* at 107:17-122:15; *see also* ECF No. 9-13 (Trial Exhibit 4).  The Intoximeter shows the Appellant's first breath sample was positive for alcohol at a level of .123 grams per 210 liters of breath.  ECF No. 9-14 (Trial Exhibit 5).  The Appellant's second breath sample registered at a level of .119 grams per 210 liters of breath.  *Id.*

The Appellant's Convictions And Sentence

After closing arguments, the Magistrate Judge found the Appellant guilty of driving with a breath alcohol content of .08 or higher and unsafe operation of a vehicle, and he acquitted the Appellant of driving under the influence of alcohol and failure to maintain control of a vehicle.  Tr. at 123:22-131:24 (ECF No. 9-1).  And so, the Magistrate Judge imposed fines and costs totaling $380 and 12 months of probation with standard and mandatory conditions of probation, as well as special conditions, including total abstinence from alcohol, substance abuse testing, and alcohol abuse treatment.  *Id.* at 133:20-135:14.  Thereafter, the Appellant filed this appeal *pro se* on March 20, 2025.  ECF No. 1.

**III.    STANDARDS OF DECISION**

**A.  Standard Of Review**

The scope of an appeal of a conviction by a magistrate judge is the same as in an appeal to a Court of Appeals from a judgment entered by a district judge.  Fed. R. Crim. P. 58(g)(2)(D).  And so, when conducting an appellate review of a magistrate judge's judgment of conviction, this Court "utilizes the same standards of review applied by a court of appeals in assessing a district court conviction," rather than conducting a "trial de novo."  *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005).

In this regard, the Court should not disturb factual findings made by a magistrate judge after an evidentiary hearing on suppression issues absent clear error.  *United States v. Williams*, 808 F.3d 238, 244 (4th Cir. 2015) (citation omitted).  When the magistrate judge has denied a motion to suppress, the Court "view[s] the evidence in the light most favorable to the government."  *Id.* at 245 (citing *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013)).  The Fourth Circuit has also held that "[a] district court's ultimate determination of a reasonable-suspicion question is assessed de novo."  *Id.* at 244 (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002) and *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).  In addition, the magistrate

judge's admission of evidence is reviewed for abuse of discretion. *United States v. Hager*, 721 F.3d 167, 199 (4th Cir. 2013) (citation omitted). Lastly, the Court's review of a magistrate judge's decision to grant or deny a continuance is also reviewed for abuse of discretion. *See United States v. Clinger*, 681 F.2d 221, 223-24 (4th Cir. 1982).

### B. Reasonable Articulable Suspicion

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. And so, it is well-established that the temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of persons within the meaning of the Fourth Amendment, and must be reasonable. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976).

It is also well-established that the "reasonable suspicion" standard is not an onerous one. *See, e.g.*, *United States v. Arvizu*, 534 U.S. 266, 273-75 (2002) ("Because the 'balance between the public interest and the individual's right to personal security,' . . . tilts in favor of a standard less than probable cause in brief investigatory stops of persons or vehicles, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'") (first quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975), then quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). To meet this standard, the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts," establish reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In determining whether the stop or prolonged detention was reasonable, courts are encouraged to "credit[] the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993); *accord Arvizu*, 534 U.S. at 273-74 (permitting "officers to draw on their experiences and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (citation and quotation marks omitted); *United States v. Johnson*, 599 F.3d 339, 343-45 (4th Cir. 2010). The Fourth Circuit has also held that "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic

6

stop." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *see also Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2005). And so, the Court's determination of whether reasonable suspicion justified a stop or detention should be based on the totality of the circumstances, not giving undue attention to individual factors. *See*, *e.g.*, *Arvizu*, 534 U.S. at 273 (reaffirming the "totality of the circumstances" standard).

Relevant to the pending appeal, the Court evaluates whether the facts amount to reasonable suspicion of drunk driving, "viewed from the standpoint of an objectively reasonable police officer." *Ornelas*, 517 U.S. at 696. In this regard, the Fourth Circuit held that an officer's observations that the defendant had bloodshot, watery eyes and was shaking, plus his observation of an open bottle of alcohol on the rear passenger side floorboard, after a valid traffic stop, were sufficient to permit an extension of the traffic stop to determine intoxication. *United States v. Washington*, 338 F. App'x 316, 318-19 (4th Cir. 2009). The Fourth Circuit has also held that reasonable suspicion existed to justify performing SFSTs where the driver's "breath smelled like alcohol, as observed by an officer trained in DUI detection, and that it was 2:15 in the morning and [the driver] intended to drive onto the [Fort Monroe] base to visit a hotel." *United States v. Turner*, No. 95-5606, 1996 WL 85165, at *1 (4th Cir. 1996); *see also Ferris v. State*, 355 Md. 356, 391 (1999) ("Bloodshot eyes, in conjunction with the odor of alcohol emanating from the person, would ordinarily provide the police with reasonable suspicion that a driver was under the influence of alcohol."). And so, this Court has held that "driving conduct alone can establish reasonable suspicion of impairment . . . to justify a roadside sobriety test." *Pulsifer v. Prince*, No. MJM-22-3080, 2024 WL 2783898, at *8 (D. Md. May 30, 2024) (quoting *Amundsen v. Jones*, 533 F.3d 1192, 1200 n.4 (10th Cir. 2008)).

**C. Breathalyzer Tests**

The Fourth Circuit has "long recognized that a 'breathalyzer test' is the 'best means of obtaining evidence of . . . breath alcohol content.'" *United States v. Ahlstrom*, 530 F. App'x 232, 238 (4th Cir. 2013) (quoting *United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991)). In this regard, the Fourth Circuit has recognized that:

> [T]he Intoximeter and its functions were shown to be generally reliable and accurate. According to the Intoximeter's attestation clause, the device "ha[d] been approved by the National Highway Traffic Safety Administration (NHTSA) as conforming to the model

> specifications for evidential breath alcohol measurement devices." . . . NHTSA certification is widely accepted by courts as evidence of a device's reliability. . . . And this is for good reason. The NHTSA, a unit of the Department of Transportation, has been evaluating breath alcohol testing devices for evidential use for thirty years. . . . It "provid[es] a centralized qualification test program for breath-testing devices designed to collect evidence in law enforcement programs." . . . Notably, to achieve NHTSA approval, a device must undergo a rigorous battery of tests, conducted "semi-annually or as necessary." . . .
>
> Second, evidence was introduced to show that the Intoximeter was accurately calibrated at the time the test was administered. Specifically, the Intoximeter's attestation clause indicated that the device had been "certified as accurate within the past 90 days by a United States Park Police technician who is certified by the instrument manufacturer to calibrate and conduct accuracy checks." . . . Indeed, it had been calibrated on November 14, 2011, less than two months before it was used for [the Defendant]. . . . Additionally, Officer Gillespie testified that the Intoximeter is designed to conduct a self-diagnostic test before use, and will take itself out of operation if a malfunction is detected. He is well trained in its use, and stated that the self-diagnostic test did not reveal any problems.

*Ahlstrom*, 530 F. App'x at 239-40 (citations omitted). In addition, the Fourth Circuit has observed that "the list of approved devices is published in the Federal Register, *see, e.g.*, Conforming Products List of Evidential Breath Alcohol Measurement Devices, 77 Fed.Reg. 35747–01 (June 14, 2012), and subject to judicial notice by this Court." *Id.* at 239 n.5 (citing 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.")).

### D. Continuances And Speedy Trial Violations

Lastly, in *Barker*, the Supreme Court established a balancing test to determine whether a Sixth Amendment speedy trial violation has occurred, pursuant to which the Court weighs the following four factors: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 524, 530 (1972). To prevail on a constitutional speedy trial claim, a defendant must establish that "on balance," these four factors weigh in his favor. *See United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995). The Supreme Court has also held that the Court does not need to conduct a speedy trial inquiry unless the defendant can show "that the interval between accusation and trial

has crossed the threshold dividing ordinary from 'presumptively prejudicial delay.'"[1] *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (quoting *Barker*, 47 U.S. at 530-31). Given this, "[i]f the delay is not uncommonly long, the inquiry ends there." *United States v. Grimmond*, 137 F.3d 823, 827–28 (4th Cir. 1998) (citing *Doggett*, 505 U.S. at 652 (stating that "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness")); *see also Barker*, 407 U.S. at 530 (noting that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance"). And so, the Fourth Circuit has held that a delay of more than one year is "presumptively prejudicial." *Grimmond*, 137 F.3d at 828.

In addition, the Court must also assess whether the Defendant has actually suffered prejudice as a result of the delay. When considering the delay's adverse impact on the defense, the Court considers: "(1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (citing *Barker*, 407 U.S. at 532). In this regard, the Defendant must point to specific evidence that affirmatively supports this contention that his defense was impaired. *See Hall*, 551 F.3d at 273 (citing *Grimmond*, 137 F.3d at 830). And so, a general allegation of prejudice based upon conjecture is an insufficient to establish actual prejudice. *See id.*

## IV. ANALYSIS

In this appeal, the Appellant challenges his criminal convictions for driving with a breath alcohol content of .08 or higher and unsafe operation of a vehicle upon the following three grounds: (1) the traffic stop at issue in this case was unlawfully extended under *Rodriguez v. United States*; (2) the breathalyzer test administered to the Appellant "lacked scientific validation"; and (3) the Government's request to continue the trial resulted in prejudice to the Appellant. *See* ECF No. 5 at 1-9. And so, the Appellant requests that the Court reverse the

---

[1] When considering the Government's reason for a delay, the Court should assign "different weights . . . to different reasons" and characterize the reasons as either valid, improper or neutral. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) (quoting *United States v. Barker*, 407 U.S. 524, 531 (1972)). In this regard, a deliberate attempt by the prosecution to delay a defendant's trial to gain a tactical advantage would constitute an improper reason and weigh heavily against the Government. *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009). Reasons for delaying a trial that are neutral include a lack of law enforcement manpower or government resources. *See Grimmond*, 137 F.3d at 828.

Magistrate Judge's findings of guilty on the driving with a breath alcohol content of .08 or higher and unsafe operation of a vehicle charges, and dismiss these charges with prejudice. *See id.* at 9-10. In the alternative, the Appellant request that the Court remand this matter to the Magistrate Judge to, among other things, conduct an evidentiary hearing on these issues. *Id.*

The Government counters that the Court should affirm the Appellant's convictions, because: (1) Officer Callahan had reasonable articulable suspicion to extend the traffic stop involving the Appellant's vehicle and to conduct SFSTs; (2) the Breathalyzer test was properly administered and admitted into evidence at trial; and (3) the Government's request for a continuance did not prejudice the Appellant. ECF No. 9 at 8-23. And so, the Government requests that the Court affirm the Appellant's convictions and dismiss this appeal. *Id.* at 24.

For the reasons discussed below, a careful review of the evidentiary record in this case shows that Officer Callahan's decision to extend the Appellant's traffic stop and to conduct SFSTs was supported by a reasonable articulable suspicion that the Appellant had been driving under the influence of alcohol. The evidentiary record also shows that the Magistrate Judge did not err by admitting the Appellant's Breathalyzer test results into evidence during the trial below. The Appellant also has not shown that he was prejudiced by the Government's request to continue the trial. And so, the Court: (1) AFFIRMS the Appellant's convictions and (2) DISMISSES this appeal.

### A. The Trial Delay Did Not Prejudice The Appellant

As an initial matter, the Appellant has not shown that he was prejudiced by the Government's successful motion to continue the trial in this matter for 62 days. To determine whether a Sixth Amendment speedy trial violation has occurred in this case due to a continuance, the Court considers and balances the following four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 524, 530 (1972). And so, to prevail on his Speedy Trial challenge in this appeal, the Appellant must establish that "on balance," these four factors weigh in his favor. *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995).

Relevant to the pending motion, the Court considers the following factors when assessing a delay's adverse impact on the defense: "(1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (citing *Barker*,

407 U.S. at 532). In this regard, the Fourth Circuit has held that a delay between accusation and trial of more than one year is "presumptively prejudicial." *Grimmond*, 137 F.3d at 828. A defendant must point to specific evidence that affirmatively supports this contention that his defense was impaired. *See Hall*, 551 F.3d at 273 (citing *United States v. Grimmond*, 137 F.3d 823, 830 (4th Cir. 1998)). And so, a general allegation of prejudice based on conjecture is not sufficient to establish actual prejudice. *See id.*

In this appeal, the Appellant argues that he was prejudiced by the two-month continuance of the trial date in this criminal matter, because the Government used the additional time to file an untimely response to his motion to suppress evidence. *See* ECF No. 5 at 8. In this regard, the Appellant argues that the continuance afforded the Government more time to respond to his motion to suppress and put him at a disadvantage, because he did not have sufficient time to file a reply brief before the trial. *See id.* And so, the Appellant contends that the Government's request for a continuance of the trial date "prolonged the pendency of the charges" brought against him, and "damaged [his] professional standing, eligibility for federal security clearances, employment opportunities, and income." *Id.*

The Appellant's argument is not persuasive for several reasons. First, the delay of the trial in this matter extended the case by just 62 days. Notably, the litigation history for this case shows that the Appellant was prosecuted and ultimately convicted in this case in less than one year. In fact, the Appellant's trial concluded approximately 286 days after his April 26, 2024, arrest. Given this, the delay in this case is not presumptively prejudicial. *See Grimmond*, 137 F.3d at 828 (holding that a delay between accusation and trial of more than one year is "presumptively prejudicial").

Second, the Appellant fails to show how he was prejudiced by this delay. While the record evidence substantiates the Appellant's argument that the Government filed a belated response in opposition to his motion to suppress, the Appellant does not explain how the continuance, or this late filing, actually prejudiced his defense. The litigation history of this case shows that the Defendant neither filed a reply brief in support of his motion to suppress, nor requested an extension of time to submit such a filing prior to the trial. *See United States v. Quiah*, CBA-24-po-3764 (docket reflecting no such filings). The litigation history also shows that the Appellant did not object to the filing of the Government's response during the proceedings below. *See id.* Given this, the Appellant's claim of prejudice is simply a general

allegation of prejudice that is based on conjecture and not sufficient to establish actual prejudice in this case. *See Hall*, 551 F.3d at 273.

Lastly, while the Defendant did assert his right to a speedy trial before the Magistrate Judge granted the continuance, the remaining factor that the Court weighs also does not support a finding of a speedy trial violation in this case. Notably, the reason given by the Government for the continuance was that Officer Callahan would be in training on December 5, 2024, and thus, not available to testify during the trial. *See* ECF No. 9 at 2. Given this, the above factors weigh against finding a Sixth Amendment speedy trial violation in this case.

**B. The USPP Did Not Unlawfully Extend The Traffic Stop**

The evidentiary record in this case also shows that Officer Callhan appropriately extended the Appellant's traffic stop, because he had a reasonable articulable suspicion that the Appellant had been driving while under the influence of alcohol. It is well-established that this Court's "ultimate determination of a reasonable-suspicion question is assessed de novo." *United States v. Williams*, 808 F.3d 238, 244 (4th Cir. 2015) (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002) and *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). And so, the Court considers the factual record and the totality of the circumstances in this case to determine whether the extension of the Appellant's traffic stop was supported by a reasonable articulable suspicion. *See, e.g.*, *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (reaffirming the "totality of the circumstances" standard).

In this regard, the Supreme Court has made clear that a traffic stop need only be supported by reasonable suspicion that a traffic violation has occurred. *See Kansas v. Glover*, 589 U.S. 376 (2020) (traffic stop valid where deputy had reasonable suspicion that the suspect's driver's license was revoked). The Fourth Circuit has also held that "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)); *see also Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2005). The Supreme Court has also explained that reasonable suspicion means something "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity" but "less . . . than probable cause." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). And so, the Court's determination of whether

reasonable suspicion justified a stop or detention should be based on the totality of the circumstances, not giving undue attention to individual factors. *See, e.g.*, *Arvizu*, 534 U.S. at 273.

Relevant here, the Court evaluates whether the facts amount to reasonable suspicion of drunk driving, "viewed from the standpoint of an objectively reasonable police officer." *Ornelas*, 517 U.S. at 696. In this regard, the Fourth Circuit held that an officer's observations that the defendant had bloodshot, watery eyes and was shaking, plus his observation of an open bottle of alcohol on the rear passenger side floorboard, after a valid traffic stop, were sufficient to permit an extension of the traffic stop to determine intoxication. *United States v. Washington*, 338 F. App'x 316, 318-19 (4th Cir. 2009). The Fourth Circuit has also held that reasonable suspicion existed to justify performing SFSTs where the driver's "breath smelled like alcohol, as observed by an officer trained in DUI detection, and that it was 2:15 in the morning and [the driver] intended to drive onto the [Fort Monroe] base to visit a hotel." *United States v. Turner*, No. 95-5606, 1996 WL 85165, at *1 (4th Cir. 1996); *see also Ferris v. State*, 355 Md. 356, 391 (1999) ("Bloodshot eyes, in conjunction with the odor of alcohol emanating from the person, would ordinarily provide the police with reasonable suspicion that a driver was under the influence of alcohol."). And so, this Court has held that "driving conduct alone can establish reasonable suspicion of impairment . . . to justify a roadside sobriety test." *Pulsifer v. Prince*, No. MJM-22-3080, 2024 WL 2783898, at *8 (D. Md. May 30, 2024) (quoting *Amundsen v. Jones*, 533 F.3d 1192, 1200 n.4 (10th Cir. 2008)).

In this case, the evidentiary record shows that Officer Callahan had a reasonable articulable suspicion that the Appellant was driving under the influence of alcohol when he extended the traffic stop to conduct SFSTs for several reasons.

First, the record evidence shows that Officer Callahan observed the Appellant driving on BW Parkway in an erratic manner and speeding. During the trial below, Officer Callahan testified that, on April 26, 2024, he was patrolling the northbound BW Parkway in the area of Powder Mill Road, when he saw the Appellant's vehicle enter the ramp to the BW Parkway and he observed the vehicle swerve to the extent that it crossed the fog line and nearly struck the concrete wall on the ramp. Tr. at 11:21-14:16 (ECF No. 9-1). Officer Callahan also testified that he continued following the Appellant's vehicle and that the vehicle continued to swerve, crossing both the center dotted line and the fog line multiple times. *Id.* at 11:21-16:17. In

13

addition, Officer Callahan testified that he activated his cruiser's front radar and recorded the vehicle's speed at 76 m.p.h. in a 55-m.p.h. zone. *Id.* at 11:21-12:1, 25:16-20 and 129:15-19. Given this, Officer Callahan testified that he followed the vehicle for approximately five miles and he activated emergency equipment to initiate a traffic stop. *Id.* at 16:18-17:21. And so, Officer Callahan's trial testimony that he observed the Appellant speeding and driving erratically on BW Parkway, before he initiated a traffic stop, supports a finding of reasonable articulable suspicion to conduct the initial traffic stop. *See Pulsifier*, 2024 WL 2783898, at *8.

Second, the record evidence also shows that Officer Callahan had a reasonable articulable suspicion that the Appellant was driving under the influence of alcohol during the initial traffic stop, to justify extending the traffic stop. In this regard, Officer Callahan testified that, after the Appellant stopped his vehicle, Officer Callahan approached the vehicle on the passenger side, for officer safety, and made contact with the Appellant through the passenger side window. *Id.* at 17:22-18:22. Officer Callahan also testified that he smelled an odor of alcohol coming from the vehicle's passenger compartment. *Id.* at 55:12-56:23. This testimony is corroborated by the video evidence, which shows Officer Callahan commenting that he smelled the odor of alcohol and then askied the Appellant whether he had been drinking. *See* ECF No. 9-10 (Officer Callahan body cam footage).

Officer Callahan further testified that he observed that the Appellant's eyes were glassy and that the Appellant's speech was stumbling and confused, and he was fumbling with documents, during the initial traffic stop. Tr. at 18:23-20:10 (ECF No. 9-1). But the Magistrate Judge determined that "he did not notice any slurring" and any fumbling by the Appellant was not unusual for "somebody that is stopped" by the police. *Id.* at 53:25-55:6. Based upon a review of the video evidence, the Court agrees. And so, the evidence of reasonable articulable suspicion here is that Officer Callahan observed the Appellant driving erratically and speeding, and that Officer Callahan detected the smell of alcohol coming from the passenger compartment of the vehicle, before he decided to extend the traffic stop.

The evidence before the Court also shows that, once the Appellant exited the vehicle, Officer Callahan observed the Appellant behaving in a manner suggesting that the Appellant was under the influence of alcohol. Notably, Officer Callahan testified that, when he walked to the driver's side of the vehicle to assist the Appellant in safely exiting the vehicle, he smelled the odor of an alcoholic beverage coming from the Appellant's person and again observed the

14

Appellant's glassy eyes. *Id.* at 55:12-56:23. Officer Callahan also testified that the Appellant was unsteady on his feet and needed to be assisted to the front of his vehicle. *Id.* at 56:3-14. Officer Callahan's observations are, to an extent, corroborated by the video evidence. *See* ECF No. 9-10. And so, Officer Callahan testified that he conducted SFSTs on an area of the roadside to determine if the Appellant was under the influence of alcohol. Tr. at 57:1-5 (ECF No. 9-1).

Given these facts, the Court is satisfied that the totality of the circumstances surrounding the subject traffic stop shows that Officer Callahan's decision to extend the traffic stop, and to administer SFSTs, was supported by a reasonable articulable suspicion that the Appellant was driving under the influence of alcohol.

The Appellant's arguments to show that the extension of the subject traffic stop violates *Rodriguez v. United Sates* are also not persuasive. The Appellant first argues that Officer Callahan did not have a new and independent reasonable suspicion to prolong the traffic stop, because the smell of alcohol was not individualized to him and could be attributed to the passenger in the vehicle. *See* ECF No. 5 at 3-4. But, the Fourth Circuit has held that an officer who smells alcohol in the passenger compartment of a vehicle following a crash may reasonably infer that either the driver, or the passenger, or both individuals, were drinking at the time of the crash. *See United States v. Blakeney*, 949 F.3d 851, 860 (4th Cir. 2020) (citing *Maryland v. Pringle*, 540 U.S. 366, 372 (2003)). The Appellant next argues that Officer Callahan's testimony that he slurred his speech and was glassy eyed was either rejected by the Magistrate Judge, or unsupported by the body-worn camera footage. As discussed above, the Magistrate Judge did not find that the Appellant slurred his speech based upon the video evidence and the video evidence also does not show that the Appellant's speech was slurred or that he was glassy-eyed. *See* Tr. at 53:25-55:6 (ECF No. 9-1). But the Magistrate Judge did find that the Appellant made a "huge pause and his eyes got big," and he did not directly answer Officer Callahan when asked whether the Appellant had been drinking. *Id*. at 54:22-25. The video evidence also makes clear that, when Officer Callahan again asked the Appellant whether he had been drinking for a second time, the Appellant paused and did not answer the question. *See* ECF No. 9-10.

Given this, the Court agrees that the totality of the circumstances in this case shows that Officer Callahan had a reasonable articulable suspicion that the Appellant had been driving under the influence of alcohol to allow him to lawfully continue the traffic stop and to ask that the Appellant exit the vehicle. *See Arvizu*, 534 U.S. at 273. For this reason, the Court

AFFIRMS the Magistrate Judge's finding of reasonable articulable suspicion and DENIES the Appellant's appeal on this issue.

### C. The Magistrate Judge Properly Admitted The Appellant's Breathalyzer Test Results

As a final matter, the Appellant has not shown that the Magistrate Judge erred by admitting his breathalyzer test results into evidence during the trial. The Fourth Circuit has "long recognized that a 'breathalyzer test' is the 'best means of obtaining evidence of . . . breath alcohol content.'" *United States v. Ahlstrom*, 530 F. App'x 232, 238 (4th Cir. 2013) (quoting *United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1991)). In this regard, the Fourth Circuit has held that:

> [T]he Intoximeter and its functions were shown to be generally reliable and accurate. According to the Intoximeter's attestation clause, the device "ha[d] been approved by the National Highway Traffic Safety Administration (NHTSA) as conforming to the model specifications for evidential breath alcohol measurement devices." . . . NHTSA certification is widely accepted by courts as evidence of a device's reliability. . . . And this is for good reason. The NHTSA, a unit of the Department of Transportation, has been evaluating breath alcohol testing devices for evidential use for thirty years. . . . It "provid[es] a centralized qualification test program for breath-testing devices designed to collect evidence in law enforcement programs." . . . Notably, to achieve NHTSA approval, a device must undergo a rigorous battery of tests, conducted "semi-annually or as necessary." . . .
>
> Second, evidence was introduced to show that the Intoximeter was accurately calibrated at the time the test was administered. Specifically, the Intoximeter's attestation clause indicated that the device had been "certified as accurate within the past 90 days by a United States Park Police technician who is certified by the instrument manufacturer to calibrate and conduct accuracy checks." . . . Indeed, it had been calibrated on November 14, 2011, less than two months before it was used for [the Defendant]. . . . Additionally, Officer Gillespie testified that the Intoximeter is designed to conduct a self-diagnostic test before use, and will take itself out of operation if a malfunction is detected. He is well trained in its use, and stated that the self-diagnostic test did not reveal any problems.

*Ahlstrom*, 530 F. App'x at 239-40 (citations omitted). The Fourth Circuit has also observed that "the list of approved devices is published in the Federal Register, *see*, *e.g.*, Conforming Products List of Evidential Breath Alcohol Measurement Devices, 77 Fed.Reg. 35747–01 (June 14, 2012),

and subject to judicial notice by this Court." *Id.* at 239 n.5 (citing 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed.")).

In this appeal, the evidence before the Court shows that the Appellant's breathalyzer test results were properly admitted into evidence, because the breathalyzer test used by the USPP was reliable and accurate. The Appellant argues that "the government submitted no certificate of analysis, no manufacturer documentation, and no testimony to verify that the specific calibration or testing met [National Institute of Standards and Technology] standards. ECF No. 5 at 5. But, his argument is contradicted by the record evidence.

Notably, the record evidence shows that the Government established that the Appellant's breathalyzer test was reliable and accurate. During the trial below, Officer Stewart testified that she administered a breath test to the Appellant using the Intoximeter EC/IR-II when the Appellant arrived at the police station. Tr. at 102:1-19 (ECF No. 9-1). Officer Stewart also testified that she was trained and certified in operating the Intoximeter. *Id.* at 102:10-103:11.

With regards to the administration of the breathalyzer test, Officer Stewart testified that she started a 20-minute observation period of the Appellant to ensure that the Appellant retained no mouth alcohol during the breath test. *Id.* at 104:6-17. Officer Stewart also testified that the second 20-minute observation period was completed with the Appellant being observed by an officer at all times. *Id.* at 106:3-22. And so, after the second 20-minute observation period, the Appellant blew two valid breath samples into the Intoximeter, and the instrument recorded his breath alcohol content. *Id.* at 106:25-107:13.

Importantly here, Officer Stewart testified that the Intoximeter was in proper working order when the Appellant's breath test was conducted. *Id.* at 107:14-16. The Government also introduced into evidence the breath testing instrument certification notice, which indicates that the Intoximeter used for the Appellant's breath sample "has been tested and found to be suitable for use in analyzing breath alcohol for evidential purposes" and that "[t]he instrument conforms to the standards required by the United States Department of Transportation for evidential breath alcohol measurement." *Id.* at 107:17-122:15; *see also* ECF No. 9-13 (Trial Exhibit 4). The Intoximeter shows the Appellant's first breath sample was positive for alcohol at a level of .123 grams per 210 liters of breath. ECF No. 9-14 (Trial Exhibit 5). The Appellant's second breath sample registered at a level of .119 grams per 210 liters of breath. *Id.*

The record evidence also makes clear that the Appellant's breathalyzer test results

include a signed attestation certifying that the breath sample results were analyzed by an instrument approved by the national highway traffic safety administration as conforming to the model specifications for evidential breath alcohol measurement devices. *See* ECF No. 9-13 (Trial Exhibit 4).  In addition, the breath test report states that the test instrument's date of certification was February 26, 2024, which was approximately two months before the breathalyzer test was administered to the Appellant in this case. *See id.* at 1.

Lastly, the Court also observes that the Federal Register lists the Intoximeter, the breathalyzer test instrument used in this case, as an approved evidential breath measurement device. *See Ahlstrom*, 530 F. App'x at 239 n.5; ECF No. 9-13 (certification notice that certifies that the Intoximeter EC/IR, serial number 010688, had been tested and found suitable for use in analyzing breath alcohol levels for evidential purposes.).  Given this evidence, the Court is satisfied that the Intoximeter was authenticated through this evidence and shown to be reliable. *See Ahlstrom*, 530 F. App'x at 239-40 (breath alcohol tests are admissible if they are consistent with general standards for evaluating the reliability of machine-generated evidence.).  And so, Court also **AFFIRMS** the Magistrate Judge's decision to admit the breathalyzer test into evidence at trial and **DENIES** this Appellant's appeal on this issue.

## V.    CONCLUSION

In sum, the Appellant has not shown that he was prejudiced by the 62-day continuance of his trial.  The record evidence also shows that the extension of the Appellant's traffic stop was supported by reasonable articulable suspicion and that the Magistrate Judge properly admitted the Appellant's breathalyzer test results into evidence during the trail.  And so, for the foregoing reasons, the Court:

(1) **AFFIRMS** the Appellant's convictions; and

(2) **DISMISSES** the appeal.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

18